REVISED - March 22, 2000

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 99-40411

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT DANIEL SALING, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas, Sherman

February 29, 2000

Before POLITZ, GIBSON,[*] and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Robert Daniel Saling, Jr. appeals his conviction and sentence on the grounds that the United States breached their plea agreement. Concluding that the government violated the express terms of its agreement with the defendant, we vacate the conviction and sentence and remand to the district court so that Saling may withdraw his guilty plea and further proceedings may be had.

## BACKGROUND

Pursuant to a written plea agreement, Saling pleaded guilty to knowingly possessing a firearm while a convicted felon in violation of 18 U.S.C. § 922(g).

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

Taking into account all relevant factors, including Saling's prior violent felony convictions, the Presentence Report computed the sentencing range for the instant offense to be between 168-210 months. Under 18 U.S.C. § 924(e)(1), however, due to Saling's prior felonies, the minimum term of imprisonment for the instant crime was 180 months, thereby altering the guideline range to 180-210 months. At the time of sentencing, Saling was serving an undischarged term of imprisonment in the Texas prison system for three state offenses. Under the Sentencing Guidelines the instant sentence could be ordered to run concurrently, partially concurrently, or consecutively to his state sentences.[1] The PSI recommended and the district court imposed a sentence of 195 months imprisonment, to run consecutive to his state sentences, plus five years supervised release. Saling was ordered to pay a fine and the statutory assessment.

The plea agreement expressly provided that the government would not oppose the federal sentence running concurrent with Saling's state sentences. The sentence imposed was to be at the sole discretion of the district court and the government agreed to make no representations relative to the sentence. In addition, it was agreed that Saling would not be permitted to withdraw his guilty plea because of dissatisfaction with his sentence.

At the sentencing hearing the government was represented by an Assistant United States Attorney who was not involved in the negotiation of Saling's plea agreement or the entry of his guilty plea. After defense counsel informed the court

---

[1] U.S.S.G. § 5G1.3(c) (1998).

of the details of the plea agreement and urged imposition of a concurrent sentence, the following colloquy between the AUSA and the court occurred:

> [AUSA]: Your Honor, I don't disagree with what [defense counsel] said about the plea agreement agreeing to concurrent sentences within the state system. However, [my colleague] didn't have the benefit of the information that we now have about the Defendant's behavior while he's been incarcerated at Carswell.[2] And it's my understanding that . . . the probation department has made the Court aware of the Defendant's behavior while he's been incarcerated.
>
> And I'll just point out to the Court that that's consistent with the Defendant's prior behavior while incarcerated in the Bell County jail where he was charged with terroristic threat when he apparently threatened to kill another inmate within the Bell County jail.
>
> **I just encourage the Court to consider those factors when the Court determines whether this should be a concurrent or a consecutive sentence....** (emphasis added).
>
> THE COURT: Well, I understand from the information that was furnished by the probation officer that the Defendant has been causing a good deal of trouble where he's presently incarcerated and has not demonstrated the type of conduct while he's been incarcerated pursuant to this charge that would justify leniency by this Court....

The AUSA also informed the court about Saling's prior convictions and that charges had been brought against him for allegedly assaulting a prison guard. Saling was afforded an opportunity to speak in his defense, after which the court asked the prosecutor if she had anything further to say. The AUSA added:

> ...And the third things [sic] is he does have a lot of time to serve. And if we don't send a message about these inmates who are serving a lot of time, who have nothing to lose, if we don't send a message to them about how they treat the guards who are guarding them, then I don't see how we're being supportive of those guards.

---

[2]Saling was incarcerated at Carswell serving the sentence for one of his state crimes and pending sentencing in this case.

3

Saling attempted to withdraw his guilty plea during the hearing but was told it was too late. The court subsequently denied his written motion renewing his request to withdraw his plea. This appeal followed.

**ANALYSIS**

Saling contends that the government breached its plea agreement by advocating that the sentence imposed for the instant offense run consecutive to his state sentences. We review *de novo* whether the government breached its plea agreement,[3] and the facts establishing the breach must be proven by a preponderance of the evidence.[4] It is well settled that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[5] Additionally, in determining whether a breach has occurred, we must consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."[6] If a breach has in fact occurred, the sentence must be vacated without regard to whether the judge was influenced by the government's actions.[7]

---

[3]**United States v. Cantu,** 185 F.3d 298 (5th Cir. 1999); **United States v. Valencia,** 985 F.2d 758 (5th Cir. 1993).

[4]**United States v. Laday,** 56 F.3d 24 (5th Cir. 1995).

[5]**Santobello v. New York,** 404 U.S. 257 (1971).

[6]**Valencia,** 985 F.2d at 761.

[7]**Santobello,** 404 U.S. at 262-63; **United States v. Grandinetti,** 564 F.2d 723 (5th Cir. 1977).

4

The prosecutor's statements to the trial judge blatantly violated the plea agreement's express terms. That document makes manifest that part of the inducement or consideration for Saling's guilty plea was the government's promise not to oppose the imposition of a concurrent sentence.[8] The government contends that no breach occurred because the prosecutor's statements were merely an argument for a sentence at the high end of the guideline range rather than for consecutive sentences. We are neither persuaded nor favorably impressed by this contention. The above-quoted language is susceptible of only one interpretation, that is, that the prosecutor was urging in favor of a consecutive sentence, despite her knowledge of the written agreement and the government's express promise to the contrary. The record makes clear that the entire colloquy between the court, the defendant, and the AUSA was prompted by the government's objection to defense counsel's request that Saling's federal sentence be made to run concurrent with his state sentences.

The government also claims that it was not reasonable for Saling to believe that the government would withhold from the court pertinent sentencing information, such as his disruptive behavior while in custody. Again, we are not persuaded. A prosecutor has the duty as an officer of the court to inform the court of all factual information relevant to the defendant's sentence so that a sentence

---

[8]**Grandinetti,** 564 F.2d at 726 ("[T]he defendant offers his plea not in exchange for the actual sentence or impact on the judge, but for the prosecutor's [actions] in court. If these [actions] are not adequate (as opposed to not successful), then the agreement has not been fulfilled.") (citations omitted).

may be imposed based upon a complete and accurate record.[9]  This typically is done by providing the probation officer with information to be included in the PSI or by relating that information in open court at the sentencing hearing.[10]  But that is not what happened in the case at bar.  The court *à quo* was not proceeding based on an incomplete or inaccurate factual record.  The government simply attempted to influence the judge to impose a consecutive sentence by repeating the facts of Saling's prior convictions and his allegedly violent conduct while incarcerated, most of which, if not all, previously had been disclosed to the court without objection.[11]  As we earlier have directed, "if a guilty plea is entered as part of a plea agreement, the government must strictly adhere to the terms and conditions of its promises."[12]

The government knowingly violated its agreement, thus invalidating Saling's

---

[9]**United States v. Goldfaden,** 959 F.2d 1324 (5th Cir. 1992) (quoting **United States v. Block,** 660 F.2d 1086 (5th Cir.Unit B Nov. 1981)).

[10]**Block,** 660 F.2d at 1090-91 (entering into a plea bargain agreement does not forfeit the government's right "to participate in either the presentence investigation or the sentencing hearing").

[11]It is unclear from the record whether the court had been made aware of Saling's alleged assault of a corrections officer prior to the sentencing hearing. Neither the PSI nor its Addendum reflect this alleged occurrence, but the AUSA indicated she was aware that the probation department had informed the court of all of Saling's behavior while incarcerated pending sentencing, which would have included this incident.  Even if the court did not have knowledge of this alleged incident, however, the prosecutor could have so informed the court and then expressly stated that the government would not take a position on how such conduct should affect Saling's sentence due to the written plea agreement.

[12]**Valencia,** 985 F.2d at 760.

6

guilty plea.[13]  Saling has elected to withdraw that plea rather than secure specific performance of the agreement.  In **United States v. Palomo**,[14] we held:

> A defendant who alleges that a plea agreement has been breached has the option of seeking one of two remedies on appeal: (1) specific performance, which requires that the sentence be vacated and that the defendant be resentenced by a different judge; or (2) withdrawal of the guilty plea, and the opportunity to plead anew, which requires vacation of both the conviction and the sentence.

Accordingly, we VACATE Saling's conviction and sentence and REMAND this matter to the district court for further proceedings before another judge.

---

[13]**United States v. Ewing,** 480 F.2d 1141 (5th Cir. 1973).

[14]998 F.2d 253, 256 (5th Cir. 1993).